IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN F., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Respondent. | No. 20 CV 5911 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Claimant Juan F.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for summary judgment [ECF Nos. 20, 26] pursuant to Federal

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Rule of Civil Procedure 56. For the reasons discussed below, Claimant's Motion for Summary Judgment [ECF No. 20] is granted and the Commissioner's Motion for Summary Judgement [ECF No. 26] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

## PROCEDURAL HISTORY

On April 2, 2018, Claimant filed a Title II application for DIB and a Title XVI application for SSI alleging disability beginning on April 1, 2018, which was later amended to an onset date of October 1, 2018. (R. 43, 172–82, 301–03). His claim was denied initially and upon reconsideration, after which he requested a hearing before an Administrative Law Judge ("ALJ"). (R. 63–110, 122–23). On October 30, 2019, Claimant appeared and testified, with the help of a Spanish interpreter, at a hearing before ALJ Kevin Vodak. (R. 39–55). ALJ Vodak also heard testimony on that date from impartial vocational expert ("VE") Kari Seaver. (R. 55–61). On February 18, 2020, ALJ Vodak denied Claimant's claim for DIB and SSI. (R. 15–27).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since October 1, 2018, his amended alleged onset date. (R. 17). At step two, the ALJ found Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). (R. 18). Specifically, Claimant has degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral shoulders (status post left rotator cuff tear repair),

degenerative joint disease of the bilateral knees, diabetes mellitus with peripheral neuropathy, and obesity. *Id.* The ALJ also acknowledged several non-severe impairments – benign positional vertigo, hypertension, and osteoporosis – but concluded that these impairments either improved within a year or were mild to moderate in nature and therefore do not affect Claimant's ability to work. *Id.* Nevertheless, the ALJ considered the combined effect of those impairments, as well as Claimant's medically non-determinable impairment of hip pain, in assessing the full extent of Claimant's limitations and determining Claimant's residual functional capacity. *Id.*

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18–20). In particular, the ALJ considered listings 1.02, 1.04, 9.00, and 11.14. *Id.* The ALJ determined listing 1.02 did not apply because Claimant did not meet the listing criteria of a gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion, or other abnormal motion of the affected joints and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints. (R. 19). The ALJ also noted listing 1.02 requires the inability to ambulate effectively a weight-bearing joint or the inability of one of the major peripheral joints in each upper extremity to perform fine and gross movements effectively, a finding unsupported by the medical evidence. *Id.* Listing 1.04, which covers spinal disorders, also was not applicable because Claimant did not establish the compromise of a nerve root or spinal cord with nerve root compression,

3

spinal arachnoiditis, or lumbar spinal stenosis. *Id.* Nor did Claimant meet the requirement that, in addition to his diagnosis of diabetes mellitus, he have another specified symptom as required by listing 9.00. (R. 19). Finally, the ALJ paid particular attention to listing 11.14 concerning peripheral neuropathy, but ultimately found there was no disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use of the upper extremities, nor was there any evidence of a marked limitation in physical functioning. *Id.* The ALJ also considered the combined effect of Claimant's obesity on the aforementioned listings and concluded that it did not equal a listing alone or in combination with another impairment. (R. 19–20).

The ALJ then found Claimant had the residual functional capacity ("RFC") to:

"perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations. The claimant can only stand or walk four hours in an eight-hour workday. The claimant can occasionally reach overhead bilaterally. The claimant can frequently push or pull with the bilateral upper extremities. The claimant can occasionally operate foot controls bilaterally. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights or around moving mechanical parts." (R. 20).

Based on this RFC, the ALJ found at step four that Claimant had past relevant work as a cook. (R. 25). The mental and physical demands of this work exceeded Claimant's residual functional capacity, and so the ALJ concluded that Claimant would not be able to perform that past relevant work as actually or generally performed. (R. 25). The ALJ also concluded at step five that, considering Claimant's age, education, past work experience, and residual functional capacity, he is capable of performing other work within the national economy and that those jobs exist in

significant numbers. (R. 26–27). Specifically, the VE's testimony, on which the ALJ relied, identified jobs at the light exertional level, including hand packer, assembler, and sorter. *Id.* The ALJ then found Claimant was not under a disability from the amended onset date of October 1, 2018 through February 18, 2020, the date of his decision. (R. 27). The Appeals Council declined to review the matter on April 24, 2020, (R. 1–6), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); *see, e.g., Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts

to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also,* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi*, 2021 WL 5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. But even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not build a "logical bridge" from the evidence to the conclusion. *Wilder,* 22 F.4th 644 (citing *Butler,* 4 F.4th at 501); *see also, Jarnutowski v. Kijakazi,* 2022 WL 4126293, at *4–5 (7th Cir. 2022). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also, Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it."). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

### I. The VE's Methodology

Claimant contends that the ALJ relied on flawed testimony from the VE when he concluded at step five that Claimant could perform work that existed in significant numbers in the national economy. The Court agrees that the ALJ failed to ensure that the VE's job estimate was the product of a reliable methodology, and so it cannot be said that he supported his decision with substantial evidence. *Ruenger v. Kijakazi,* 23 F.4th 760, 762 (7th Cir. 2022); *Chavez v. Berryhill*, 895 F.3d 962, 968–70 (7th Cir. 2018); *Brace v. Saul,* 970 F.3d 818, 819 (7th Cir. 2020). Remand therefore is required, as explained further below.

At step five, the burden shifts from the claimant to the ALJ. The ALJ must demonstrate that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations. See 20 C.F.R. § 416.960(c)(2).

7

Almost always, the ALJ will rely on the testimony of a VE for those estimated job numbers. VEs are "professionals under contract with SSA to provide impartial testimony in agency proceedings," and they must have "expertise and current knowledge of working conditions and physical demands of various jobs; knowledge of the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs." *Biestek*, 139 S. Ct. at 1152 (citing 20 C.F.R. §§ 404.1566(e), 416.966(e); SSA, Hearings, Appeals, and Litigation Law Manual I–2–5–50, I–2–1–31.B.1 (Aug. 29, 2014)) (internal quotations and citations omitted). When providing job estimates, VEs use various sources, including the Dictionary of Occupational Titles (DOT) and the Occupational Employment Survey that organizes its job estimates by a "standard occupational classification" (SOC) system. *Ruenger,* 23 F.4th at 762; *Biestek*, 139 S. Ct. at 1152. The VE's job estimate must be the product of a reliable methodology, *Brace*, 970 F.3d at 821–22, meaning it is based on "well-accepted" sources and the VE explains his or her methodology "cogently and thoroughly." *Biestek*, 139 S. Ct. at 1155.

Here, the ALJ relied on the testimony of the VE in concluding that, considering Claimant's age, education, past work experience, and residual functional capacity, he is capable of performing other work within the national economy that exists in significant numbers. (R. 26–27). Specifically, the VE's testimony identified three jobs at the light exertional level – hand packer, assembler, and sorter – that a person with Claimant's limitations could perform. *Id.*; *see also* (R. 57–58) ("Q: Can the hypothetical individual perform other jobs in the national economy? A: Yes. There [would] be hand packer. It's DOT 920.685-018. Jobs in the national economy, 315,000.

8

It's light, SVP 2. And then an assembler. DOT 806.687-010. Jobs in the national economy, 197,000. It's light, SVP 2. And then a sorter. DOT 788.687-106. Jobs in the national economy, 132,000. It's light, SVP 2.").

Claimant's attorney asked the VE to explain the methodology behind these estimates, and the VE responded as follows:

> "Q: Ms. Seaver, can you tell us where your numbers come from?
> A: Yes. I rely on the Occupational Employment Quarterly.
> Q: And do they give you numbers by DOT number?
> A: No. They give numbers for SOC codes for occupational groups, which are made up of several DOT codes.
> Q: And how do you transfer associated numbers from – to DOT codes?
> A: I don't give numbers for the specific DOT code; I give them for the occupational group or the SOC code – that specific physical demand level or skill level.
> Q: Okay. And are all three of the jobs you testified about in the same SOC code?
> A: No.
> Q: Are they – and how many jobs are in each SOC code that are included in your answers?
> A: I'm sorry. How many –
> Q: How many different occupations – or how many DOT codes would make up the SOC code?
> A: For the sorter, there's 782 DOT codes. For the assembler, there's 1,587 DOT codes. And then for the hand packer, there's 59 DOT codes.
> Q: Okay. So do you have any idea of the numbers for those jobs by DOT code?
> A: No." (R. 59–60).

The ALJ did not follow up with the VE about her methodology following the above colloquy with Claimant's counsel. (R. 60).

The ALJ concluded the VE's testimony was reliable because she articulated a specific method that was based on her experience and consistent with the DOT. (R. 27) ("Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT) with the exception of some limitations which the DOT does

9

not address, including direction of reaching, pushing and pulling with the upper extremities, use of foot controls, and standing or walking only four hours in an eight-hour workday. For such areas, I find that the vocational expert reasonably relied upon her professional experience placing individuals with disabilities in such jobs to provide this testimony."). The Court does not share the ALJ's confidence, as there simply is not enough information in the record for the Court to review the VE's methodology, let alone confirm that it was reliable. For the same reason, it was error for the ALJ to rely upon the VE's testimony concerning jobs in the national economy that are suitable for Claimant.

Because the VE relied upon SOC codes from the Occupational Employment Survey, she must explain how she narrowed down the job numbers for the individual DOT job titles cited for Claimant – hand packer (DOT 920.685-018), assembler (DOT 806.687-010), sorter (DOT 788.687-106) – from their broader SOC groupings. That is, the SOC codes sort jobs "into broad occupational categories, such as "mathematicians" (SOC 15-2021) or "electrical engineers" (SOC 17-2071), that each encompass multiple DOT job titles. This creates a matching problem: vocational experts can identify the number of jobs in the larger SOC grouping but cannot identify how those jobs are distributed among individual DOT job titles within that grouping." *Ruenger*, 23 F.4th 762. And as the VE noted, the particular SOC codes relevant to Claimant's case are comprised of a large number of DOT titles: 59 DOT codes that make up the SOC code for a hand packer, 1,587 DOT codes for an assembler, and 782 DOT codes job for a sorter. (R. 59). How the VE pulled the numbers for Claimant's particular DOT titles out of the broader SOC estimates, then, forms the foundation for the VE's job

10

estimate. But the VE never explained her methodology in this respect, nor did the ALJ encourage her to elaborate when Claimant challenged her job numbers. *Donahue v. Barnhart,* 279 F.3d 441, 446 (7th Cir. 2002) ("If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702) to find out whether the purported expert's conclusions are reliable."). The VE's brief explanation that she "[gives numbers] for the occupational group or the SOC code – that specific physical demand level or skill level" does not "cogently and thoroughly" describe the methodology by which she narrowed the SOC numbers to the number of jobs available for the particular DOT titles (hand packer, assembler, sorter) cited. (R. 59); *Biestek,* 139 S. Ct. at 1155. Perhaps these concerns could have been alleviated by further testimony from the VE during the hearing, but because the ALJ did not inquire further, no more illuminating explanation for the VE's numbers is currently of record.

      Often, when a VE relies upon SOC codes, he or she will formulate job numbers for a particular job title, like sorter, using an equal distribution method – dividing the number of jobs from a job group in the Occupational Employment Statistics by the number of categories in that group as reflected in the Dictionary of Occupational Titles. The Seventh Circuit has frowned upon this method, but it at least potentially illuminates how a VE arrives at job numbers using the SOC and the DOT. *Ruenger*, 23 F.4th at 762 ("We have repeatedly questioned the accuracy of the equal distribution method because it illogically assumes that each DOT job title within an SOC code exists in equal numbers in the national economy.") (citing *Chavez,* 895 F.3d at 966; *Alaura v. Colvin,* 797 F.3d 503, 507–08 (7th Cir. 2015); *Voigt v. Colvin,* 781

11

F.3d 871, 879 (7th Cir. 2015); *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014)). Here, the VE offered no such explanation, leaving this Court to guess whether her method for estimating job numbers is a well-accepted one and whether her estimates reasonably approximate the number of suitable jobs available for Claimant. This does not rise to the level of substantial evidence to support the ALJ's decision as is required at step five. *Biestek*, 139 S. Ct. at 1155 (testimony meets the substantial evidence threshold when the vocational expert "cogently and thoroughly" describes a well-accepted methodology). This case must therefore be remanded to correct the error addressed above.

## II.  Remaining Issues

The Court is remanding on the error identified above regarding the reliability of the VE's testimony. Remanding on these grounds requires a new five-step hearing, which may affect the ALJ's final conclusion concerning disability. *Ruenger*, 23 F.4th at 764; *Chavez*, 895 F.3d at 970–71. The Court, accordingly, sees no need to lengthen this Memorandum Opinion and Order by addressing Claimant's other arguments in a case that is being remanded anyway for a full hearing. Nor would the Court's assessment of the other disputes Claimant posits change the result in this case, which is to remand for further proceedings and a more fulsome assessment of potential jobs available to an individual with Claimant's limitations. The Commissioner, however, should not assume that the Court agrees with the ALJ's analysis of those issues. Claimant should make no assumptions either.

In conclusion, the Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to do what is necessary to build a logical

bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

## CONCLUSION

Accordingly, for all these reasons, Claimant's Motion for Summary Judgment [ECF No. 20] is granted and the Commissioner's Motion for Summary Judgment [ECF No. 26] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 28, 2022